UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DEKOVEN KERR,

          Plaintiff,

          Case No. 2:24-cv-58

v.

          Honorable Maarten Vermaat

MARQUETTE BRANCH PRISON et al.,

          Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff's motion (ECF No. 2) to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]however, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant "Marquette Branch Prison (MDOC)." The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims, and First, Eighth, and Fourteenth Amendment and RLUIPA claims related to the delay of his Ramadan evening meal, the denial of one dose of his medication, and the handling of his property following his placement in F-Block because of a fire in Plaintiff's prison unit. Plaintiff's Eighth Amendment claim against Defendant Schroeder in her individual capacity regarding exposure to black mold remains in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the "Marquette Branch Prison (MDOC)"[2] in an official capacity and Warden Sara Schroeder in her individual and official capacities. (ECF No. 1, PageID.2.)

Plaintiff alleges that on March 13, 2024, at approximately 5:30 or 6:00 p.m., a fire was started on the frontside of D-Block. Between 6:30 and 7:00 p.m. that evening, Plaintiff was removed from his cell, which was on the backside of D-Block, and was placed in F-Block for over five hours at the direction of Defendant Schroeder. Plaintiff asserts that F-Block was closed because of black mold and that Defendant Schroeder was aware of that fact. Plaintiff also states that only the second level of D-Block was removed to F-Block, and the first level was kept in D-Block. (*Id.*, PageID.3.)

Plaintiff alleges that he is Muslim, and this took place during Ramadan, so he had not eaten since 6:00 a.m. Plaintiff was not given any food until nearly 1:00 a.m. the following morning and did not receive his prescribed medication at all that night. Plaintiff was then returned to his cell, D-Z-10, and found that all of his personal property was missing, including legal property, mail, hygiene items, and personal and state clothing. Plaintiff was left with nothing but one set of sheets, one pair of underwear, one t-shirt, one pair of socks, one pair of orange shorts and shower shoes for over twenty-four hours. When Plaintiff's property was returned, his hygiene items were

---

[2] It is not clear whether Plaintiff is seeking to sue the Marquette Branch Prison, the Michigan Department of Corrections (MDOC), or both. Regardless, as explained below, Plaintiff may not bring a civil rights action against either of these entities.

4

missing. Plaintiff denies any involvement with starting the fire, but states that he was nonetheless punished. (*Id.*)

Plaintiff asserts that since that night, he has had difficulty breathing, shortness of breath, and headaches/migraines. Plaintiff believes that this is due to exposure to black mold. Plaintiff has written numerous medical kites but has yet to receive any type of medical attention. (*Id.*)

Plaintiff seeks damages. (*Id.*, PageID.4.)

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant "Marquette Branch Prison (MDOC)"

Plaintiff's complaint seeks damages. An express requirement of 42 U.S.C. § 1983 is that the defendant be a "person." *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). The Marquette Branch Prison is an administrative unit of the MDOC. Neither a prison nor a state corrections department is a "person" within the meaning of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Furthermore, Plaintiff's claims against these entities are barred by the Eleventh Amendment. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). That amendment prohibits suits in federal court against the state or any of its agencies or departments. *Pennhurst State School & Hosp. v. Haldermann*, 465 U.S. 89, 100 (1984), *superseded by statute on other grounds*, 28 U.S.C. § 1367. A state's Eleventh Amendment immunity is in the nature of a jurisdictional defense and may be raised on the court's own motion. *Est. of Ritter v. Univ. of Mich.*, 851 F.2d 846, 852 (6th Cir. 1988). The Supreme Court has squarely held that the Eleventh Amendment bars federal suits against state departments of corrections. *Pugh*, 438 U.S. at 782. Consequently, neither the Marquette Branch Prison nor the MDOC is subject to a § 1983 action.

### B.     Defendant Schroeder

#### 1.     Official Capacity Claims

Plaintiff sues Defendant Schroeder in her individual capacity and official capacity. (ECF No. 1, PageID.2.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will*, 491 U.S. at 71; *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). As discussed above, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 98–101; *Pugh*, 438 U.S. at 782; *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks only monetary damages. (ECF No. 1, PageID.4.) An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims against Defendant Schroeder in her official capacity.

#### 2.     Exposure to Black Mold

Plaintiff asserts that he was confined in F-Block for approximately seven hours at the direction of Defendant Schroeder because of a fire which had been started on Plaintiff's unit, despite the fact that F-Block was closed due to black mold. Plaintiff alleges that only the second level of D-Block was moved, implying that such a move was unnecessary. Plaintiff claims that he

7

was exposed to black mold during this time and that he now suffers from difficulty breathing, shortness of breath, and headaches/migraines.

The Court construes Plaintiff's claim regarding Defendant Schroeder's order that he be placed in F-Block despite the fact that it was closed because of black mold as a claim under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference

8

standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Exposure to black mold may, in an appropriate case, be sufficiently serious as to satisfy the objective component of the Eighth Amendment. *Compare Board v. Farnham*, 394 F.3d 469, 486–87 (7th Cir. 2005) (concluding that mold in the ventilation system violates Eighth Amendment), *with Causey v. Allison*, No. 1:08CV155-RHW, 2008 WL 4191746, at *1 (S.D. Miss. Sept. 9, 2008) (finding no Eighth Amendment violation where prisoner claimed black mold was growing in the shower but "admits that he has had no medical problems resulting from the black mold"); *see also McIntyre v. Phillips*, No. 1:07-cv-527, 2007 WL 2986470, at *2–4 (W.D. Mich. Sept. 10, 2007) (dismissing prisoner action and holding that "some exposure to black mold is a risk society has chosen to tolerate"). Here, Plaintiff states that the presence of mold was sufficiently serious to cause the closure of F-Block and that Defendant Schroeder was aware of this fact, but nonetheless ordered Plaintiff to be housed there for a period of approximately seven hours. Plaintiff

also alleges that the exposure to the black mold caused health problems. Although Plaintiff has by no means proven his Eighth Amendment claim, at this stage of the proceedings, the Court will not dismiss Plaintiff's Eighth Amendment claim against Defendant Schroeder.

### 3. Remaining allegations

#### a. Respondeat Superior

Plaintiff also states that after he was placed in F-Block, his evening Ramadan meal was delayed until 1:00 a.m. the next morning, he missed a dose of his medication, he was temporarily deprived of his property, and his hygiene property was never returned to him. However, Plaintiff fails to allege any facts showing that Defendant Schroeder had any involvement with these events. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Because Plaintiff does not allege facts showing that Defendant Schroeder was responsible for the delay in his Ramadan meal, his missed dose of medication, or the handling of his property, these claims are properly dismissed. Moreover, even

setting this issue aside, as explained below, Plaintiff fails to state any claim regarding the delay in his Ramadan meal, his missed dose of medication, or the handling of his property.

### b. First Amendment and RLUIPA

With respect to the delay in receiving his meal, the Court notes that negligent interference with a prisoner's religious diet by prison officials does not violate the Constitution. *See Colvin v. Caruso*, 605 F.3d 282, 293-94 (6th Cir. 2010) (holding that isolated incidents of negligence by prison officials in implementing kosher food requirements is not actionable under the First Amendment); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (isolated acts of negligence in providing kosher diet do not support a free-exercise claim); *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("[Plaintiff] must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983." (citing *Daniels v. Williams*, 474 U.S. 327, 330 (1986))).

This is also true for claims under RLUIPA. *Colvin v. Horton*, No. 2:19-cv-122, 2019 WL 3927425, at *6 (W.D. Mich. Aug. 20, 2019) (citing *Garrison v. Dutcher*, No. 1:07-cv-642, 2008 WL 4534098, at *6 (W.D. Mich. Sept. 30, 2008)) (concluding that RLUIPA requires a state of mind higher than negligence); *Fisherman v. Schaefer*, No. 17-cv-3766, 2019 WL 1086390, at *4 (D. Minn. Jan. 17, 2019) (holding that negligent conduct is not actionable under RLUIPA); *Guillory v. Ellis*, No. 9:11-cv-600, 2014 WL 4365274, at *9 n.10 (N.D.N.Y. Aug. 29, 2014) (same); *Nelson v. Jackson*, No. 2:12-cv1167, 2014 WL 197877, at *13 (S.D. Ohio Jan. 15, 2014) (same); *Carter v. Washington Dep't of Corr.*, No. C11-5626, 2013 WL 1090753, at *14 (W.D. Wash. Feb. 27, 2013) (same)).

In this case, the fire on Plaintiff's unit, which prompted his placement in F-Block appears to have caused a delay in Plaintiff's receipt of his Ramadan evening meal. Plaintiff does not allege facts showing that he was deliberately deprived of his evening meal. Therefore, the fact that

11

Plaintiff did not receive his evening meal in a timely fashion did not violate his rights under the First Amendment or RLUIPA.

### c. Eighth Amendment

Nor do Plaintiff's allegations regarding the delay in receiving his Ramadan evening meal, missing one dose of medication, and the handling of his property rise to the level of an Eighth Amendment violation. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* Plaintiff's allegations regarding the delay in receiving his Ramadan evening meal, missing one dose of medication, and the handling of his property do not describe conditions which constitute an extreme deprivation which could implicate the Eighth Amendment.

### d. Fourteenth Amendment

Finally, the Court notes that Plaintiff's due process claim related to the fact that his hygiene property was not returned to him is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (eff. Apr. 26, 2021). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (eff. Mar. 27, 2017). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan

13

provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

## Conclusion

The Court will grant Plaintiff's motion (ECF No. 2) to proceed *in forma pauperis*. Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant "Marquette Branch Prison (MDOC)" will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims, and First, Eighth, and Fourteenth Amendment and RLUIPA claims related to the delay of his Ramadan evening meal, the denial of one dose of his medication, and the handling of his property following his placement in F-Block because of a fire in Plaintiff's prison unit. Plaintiff's Eighth Amendment claim against Defendant Schroeder in her individual capacity regarding exposure to black mold remains in the case.

An order consistent with this opinion will be entered.

Dated: May 7, 2024                            /s/ *Maarten Vermaat*
                                              Maarten Vermaat
                                              United States Magistrate Judge